### State *vs.* James Ward.

A person in the night season entered a dwelling-house, without breaking, for the purpose of committing a felony, but broke out in making his escape. Held to be burglary.

Information for burglary; brought to the Superior Court in Hartford County and tried to the jury, on the plea of not guilty, before *Pardee, J.*

On the trial the Attorney for the State offered evidence to prove, and claimed to have proved, that the defendant entered the house of one Gantz, in the night season, through a window in the second story of the house about fifteen feet from the ground, which window was raised about six inches and supported in this position by an oil-can, with intent to steal the goods of one Davis, then in the room; and that he unlocked the door of Davis's room and the outer door of the house for the purpose of making his escape therefrom.

The Attorney asked the court to charge the jury, as matter of law, that, if they found the above facts to be proved beyond a reasonable doubt, they would support a verdict of guilty upon the charge contained in the information; and the court so charged.

The jury having returned a verdict of guilty, the prisoner moved for a new trial for error in the charge of the court.

*A. F. Eggleston,* in support of the motion.

1. The breaking out of the house was not felony at common law. Sir Matthew Hale says in his Pleas of the Crown, p. 554, "If a man enters, in the night time, by the doors open, with the intent to steal, and is pursued, whereby he opens another door to make his escape, this I think is not burglary, for *fregit et exivit, non fregit et intravit.*" And Coke says a burglar is "he that by night *breaketh and entereth* into a mansion house with intent to commit a felony."

2. But the Attorney for the State relies upon the English statute of 12 Anne, as having become a part of the common

law of this state.   That statute provides that "if any person shall enter into the dwelling house of another by day or by night, without breaking the same, with an intent to commit felony, or, being in such house shall commit any felony, and shall, in the night time, break the said house to get out of the same, such person is, and shall be, adjudged and taken to be guilty of burglary."   The preamble to that act is as follows:  "Whereas there has been some doubt whether the entering into the mansion house of another, without breaking the same, with an intent to commit some felony, and breaking the said house in the night time to get out, be burglary, be it declared and enacted, &c."   This act was passed after Sir Matthew Hale had expressed the opinion we have quoted, and in view of the prevailing opinion to the same effect as to the common law upon the point in question, and must be regarded as an original enactment setting aside the common law and not declaratory of it.

3.   This statute has never become a part of the common law of this state.   No authority holds that an English statute, passed subsequently to the emigration of our ancestors, constitutes a part of the common law of this country.   It must have been passed before.   1 Kent Com., 473.   The Colony of Connecticut dates from 1635.   It received its charter in 1662. The statute 12 Anne was enacted in 1713.   At the head of the statute book of the Colony of Connecticut, from 1650 to 1784, appears the following significant law.   "Be it enacted by the Governor, Council, and Representatives in General Court assembled, that no man's life shall be taken away, no man's honor or good name shall be stained, no man's person shall be arrested,   *   *   *   unless it be by virtue or equity of some *express law of this Colony*, warranting the same, established by the General Court, and sufficiently published; or in case of the defect of such law, in any particular case, by some clear and plain rule warranted by the word of God." This colonial enactment precedes the statute of 12 Anne by sixty-three years.   But the common law of England, *as such*, has never had any force in the state of Connecticut, much less any English *penal* statute, enacted seventy-eight years

after our existence as a colony. *Fitch* v. *Brainard*, 2 Day, 189. The New York and Massachusetts decisions are of no assistance in the discussion of this matter, because in the Massachusetts colony the common law of England was accepted and put in practice in all the courts in that province by special commission of the King; and since then the English common law, so far as applicable to our situation and government, has been recognized and adopted as one entire system by the constitutions of those states. 1 Kent Com., 472. Notwithstanding all this, the state of New York has deemed it prudent to place upon its statute book substantially the statute of 12 Anne, apparently " being in some doubt" as to its being a part of their common law. Connecticut has never assumed, in its courts of justice, or declared by statute, the 12 Anne as the law of this state. The only adoption of English statutes by the courts of this state, has been that of ancient statutes, *not penal*, whose corrective and equitable principles had become so interwoven with the common law as to be scarcely distinguishable therefrom. *Strong's case*, Kirby, 345; *Fitch* v. *Brainard*, 2 Day, 189.

*W. Hamersley*, State's Attorney, contra.

1. The statute 12 Anne is declaratory of the common law. 1 Russell on Crimes, 792. It is so expressed by the act itself. The whole reason of the thing is in favor of the view that makes a breaking out burglary as much as a breaking in. Burglary is not an offence against property. It is an offence against security. The attempt to commit a felony becomes an actual felony by reason of the violation of the security of the dwelling-house by night. The security of the house is just as much violated by a breaking at the time of the exit as at the time of the entry. The felonious intent accompanies the burglar throughout his attempt. The attempt is one act from the entry to the exit. It is immaterial at what stage of the act the violence is committed, whether at the entry, after the entry and before the exit, or at the exit. Or rather, the attempt being one act, it is not divisible for any such purpose; a breaking during the attempt affects the whole act. This

view of the law of burglary has been adopted by the American text books without exception. And has not been questioned in any reported decision. 2 Swift Dig., 331; 2 Bennett & Heard's Lead. Cas., 62; 2 Bishop Crim. Law, §§ 84, 86; 3 Greenl. Ev., § 76; *Sands's case*, 6 Rogers's City Hall Recorder, 1.

2. The common law of England, so far as the same was consistent with the local circumstances of the colony, was the common law of Connecticut at the time of its settlement, and so remains unless altered by legislation. All English statutes modifying this common law, passed prior to our settlement, were operative here as a part of our common law. 1 Bishop Crim. Law, § 13; *Commonwealth* v. *Leach*, 1 Mass., 61. English statutes passed since the settlement of the colony and before the Revolution, modifying the common law then prevailing in the colony, may also be operative now as part of our common law. Their operation depends upon the question whether they were adopted or acquiesced in during the colonial stage. 1 Bishop Crim. Law, § 12. For such adoption no legislative action is required. And it is not necessary to show affirmatively that the rule has been received in some judicial proceeding. *Commonwealth* v. *Chapman*, 13 Met., 72. A beneficial statute, in amendment of the common law, may be presumed to have been adopted here. *Sackett* v. *Sackett*, 8 Pick., 316; *Boynton* v. *Rees*, 9 id., 531; *Commonwealth* v. *Chapman*, 13 Met., 73. In Connecticut the inhabitants, by virtue of the charter of Charles II., were entitled to the liberties and immunities of English subjects the same as if born in England, and the colonial legislature was forbidden to enact laws contrary to the laws and statutes of England. Our courts have held that a statute of Anne, in amendment of the common law, qualifies that law as existing in Connecticut, though no case arose under the statute until after the revolution. *Strong's case*, Kirby, 345.

FOSTER, J. Upon the trial of this case to the jury the public prosecutor offered evidence to prove, and claime it did prove, that the defendant entered the house o

Gantz in the night season, through a window in the second story, about fifteen feet from the ground, which window was raised about six inches and supported in this position by an oil-can, with an intent to steal the goods of one Davis then in the room ; and that he unlocked the door of Davis's room and the outer door of the house, for the purpose of making his escape therefrom.    The Attorney for the State asked the court to charge the jury, as matter of law, that if they found the above facts proved, beyond a reasonable doubt, they would support a verdict of guilty of the charge contained in the information.    The court so instructed the jury, and they returned a verdict of guilty.    The motion for a new trial raises the question, was this instruction correct ?

We think it was.    If each and every of the acts constituting a crime are committed, and all the evils consequent on the crime are produced, the precise order in which the acts are done cannot be material.    Now burglary·is the breaking and entering the house of another in the night season with an intent to commit a felony.    The jury have found that, coupled with the guilty intent, the accused committed every act going to make up this crime.    The accused stood not on the doing of these acts, nor on the order of doing them, except so far forth as was convenient and necessary to accomplish his guilty purpose.    That this offence is burglary we can have no doubt.

It is true that doubts have been expressed whether a breaking, for the purpose of escape, constituted burglary.    Lord Hale and Chief Justice Trevor expressed such doubts on the trial of Elizabeth Clark at the Old Bailey in 1707.    The offence was punishable with death, and it was creditable to the hearts of judges to make fine distinctions and insist on technicalities in favor of human life, especially when the offender was a woman.    The law however was then generally considered well settled, and so the statute of 12 Anne was soon after passed as a declaratory act.    After stating the law to have been doubted, it was " declared and enacted, that if any person shall enter into the mansion or dwelling house of another, by day or by night, without breaking the same, with

an intent to commit felony; or being in such house shall commit any felony, and shall, in the night time, break the said house to get out of the same, such person is and shall be adjudged to be guilty of burglary, and shall be ousted of the benefit of clergy in the same manner as if such person had broke and entered the said house in the night time with an intent to commit burglary there." *Stat.* 12 Anne, c. 7.

We incline to the opinion that the facts found to have been committed by the accused constituted the crime of burglary at common law, and that the statute of Anne, above quoted, should be regarded simply as declaratory of that law.

If the statute be viewed in another aspect, as in alteration and amendment of the common law, it may still perhaps be considered a part of our law by adoption, though not of binding force as a statute. Statutes of this character, passed by Parliament before our declaration of independence, have been adopted by our sister states as part of their common law. *Commonwealth* v. *Leach,* 1 Mass., 59; *Commonwealth* v. *Knowlton,* 2 Mass., 534; *Pemble* v. *Clifford,* 2 McCord, 31; *Sackett* v. *Sackett,* 8 Pick., 309; *Boynton* v. *Rees,* 9 Pick., 528; *Commonwealth* v. *Chapman,* 13 Metcalf, 68. In this state, in 1787, our Superior Court recognized and adopted the statute of 9 Anne, altering and amending the common law relating to writs of mandamus. *Strong's case,* Kirby, 345.

We are satisfied with the charge of the court, and advise no new trial.

In this opinion the other judges concurred; except PARDEE, J., who, having tried the case in the court below, did not sit.