STATE OF CONNECTICUT *v.* SAM BELTON
(9962)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and GRILLO, Js.

Argued March 2—decision released June 28, 1983

*Suzanne Zitser,* assistant public defender, with whom, on the brief, were *Jerrold H. Barnett,* public defender, and *Bruce Sturman* and *Richard F. Kelly,* assistant public defenders, for the appellant (defendant).

*Katherine J. Lambert,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, *Warren Maxwell,* assistant state's attorney, and *Jorge A. Simon,* deputy assistant state's attorney, for the appellee (state).

GRILLO, J. The defendant has appealed, after a trial to a jury, from his conviction of the crime of burglary in the first degree in violation of § 53a-101 (a) (1) of the General Statutes,[1] claiming error in (1) the trial

---

[1] General Statutes § 53a-101 (a) reads in pertinent part:

"BURGLARY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and: (1) He is armed with explosives or a deadly weapon or dangerous instrument . . . ."

court's charge to the jury; and (2) in the trial court's refusal to grant his motion for judgment of acquittal.[2]

The jury could reasonably have found the following facts: At approximately midnight on the night of October 25-26, 1978, the complaining victim, a twenty-four year old female at the time of the incident, was watching television in the bedroom of her first floor apartment in Hartford. Her apartment had a front and rear entrance, both of which were locked. Upon hearing a knock on the front door, the complainant got up and twice inquired as to who was there, each time receiving no response. Fifteen minutes later, after returning to her bedroom, she heard a "tapping" or "creaking" noise coming from the kitchen, which she dismissed as the settling of the building. Soon thereafter she heard a tapping on her bedroom door, and screamed when she saw a man standing in the bedroom doorway carrying a knife.

The intruder first demanded money and, upon being informed by the complainant that she had none, pulled her into the living room where, brandishing the knife, he forced her to perform various sexual acts. During

---

[2] We reject as "utterly without merit"; *State* v. *Roos,* 188 Conn. 644, 645, 452 A.2d 1163 (1982); the defendant's additional claim that the trial court denied him his due process rights and the presumption of innocence by instructing the jury that they should consider the defendant's interest in the outcome of the case when weighing his credibility as a witness. " ' "The rule is well settled in this state that the court may advise the jury that in weighing the credibility of an accused's testimony they can consider his interest in the outcome of the trial." ' " Id.; see *State* v. *Avcollie,* 188 Conn. 626, 636-37, 453 A.2d 418 (1982), and cases cited therein.

We note that in the present case the defendant was additionally charged and found guilty of sexual assault in the first degree in violation of General Statutes § 53a-70 (a). On each conviction the defendant received a sentence of not less than eight nor more than sixteen years, to run concurrently. With the exception of the self interest claim rejected above, the defendant does not challenge his assault conviction, which remains unaffected by our conclusions concerning the first degree burglary count.

the course of this assault, the victim realized that he had dropped the knife. She reached for it and, without looking, swung the knife backwards and into the thigh of the man, who was behind her. He staggered up, struggled into the kitchen, and jumped out an open kitchen window. The complainant had noticed the open window when they had first left the bedroom, and testified that it had been closed all day and night prior to the incident. Although in her statement to the police immediately after the incident the complainant had assumed that the knife was the property of the intruder, at trial she testified that when she returned to her apartment several days later she had realized that it was hers, and identified it as her kitchen knife. She had normally kept it in the drain board along the side of the sink in the kitchen.

The investigating police officer testified that upon arriving at the scene she found the defendant lying in a parking lot behind the victim's building, bleeding profusely from an upper thigh wound. The complainant's kitchen window looks out on this parking area. An upside down garbage can containing blood stains was situated directly underneath the kitchen window from which the intruder exited.

In contrast to the testimony of the complainant, the defendant characterized everything that occurred on the night of October 25-26 as consensual. He testified that he had met the victim previously, and that on the night in question he had been invited into her apartment. Once there, he and the complainant had proceeded to have sexual relations, and when he began to dress in order to leave, she became angered and subsequently stabbed him. Fearful of further injury, he abandoned any further attempt to dress and fled out of the kitchen window.

In its information,[3] the state charged the defendant with burglary in the first degree "in that he entered a building unlawfully, with intent to commit a crime therein, and he was armed with a deadly weapon or dangerous instrument, in violation of Section 53a-101 (a) (1) of the General Statutes."

In his first assignment of error, the defendant asserts that in light of the specificity of the information and the evidence introduced at trial, the trial court erred in its charge to the jury by incorporating throughout its instruction the phrase "remains unlawfully" when explaining the elements of burglary in the first degree. Under the circumstances of the present case, we agree.

We note, first, that intent aside, the essential prerequisite to a conviction of burglary in any degree is proof beyond a reasonable doubt that the defendant entered *or* remained unlawfully in a building or dwelling. General Statutes §§ 53a-101 through 53a-103a. To enter unlawfully contemplates an entry which is accomplished unlawfully, while to remain unlawfully contemplates an initial legal entry which becomes unlawful at the time that the actor's right, privilege or license to remain is extinguished.[4] Assuming the presence of

---

[3] The burglary count of the information stated as follows: "And the said Attorney further accuses the said Sam Belton of BURGLARY IN THE FIRST DEGREE, and charges that at the City of Hartford, on or about the 26th day of October, 1978, the said Sam Belton did commit burglary in the first degree in that he entered a building unlawfully, with intent to commit a crime therein, and he was armed with a deadly weapon or dangerous instrument, in violation of Section 53a-101 (a) (1) of the General Statutes."

[4] This distinction is clarified by the comments of the commission to revise the criminal statutes on the "enter or remain unlawfully" phrase: "The purpose of this definition is to make clear that only the kind of entry or remaining which is likely to terrorize occupants is prohibited by the crime of burglary. Thus, when the building is, at the time, open to the public, or the actor is otherwise licensed or privileged to be there, the element of terror is missing and the requirement is not met. This does not mean,

other applicable elements of the crime, a burglary is committed when either type of "entry" is established. In the present case, the state charged solely that the defendant "entered unlawfully."[5]

In its charge to the jury, the trial court repeatedly utilized the disjunctive phrase "or remains unlawfully" while instructing the jury on the elements of burglary in the first degree. The defendant duly excepted to this component of the charge.

"The function of an accusatory pleading such as an information is to inform a defendant of 'the nature and cause of the accusation' as required by our federal and state constitutions. U.S. Const., amend. VI; Conn. Const., art. I § 8." *State* v. *Carter*, 189 Conn. 631, 646, 458 A.2d 379 (1983). "Nothing is more elementary in criminal law than that an accused is required to defend only against the charge alleged." *State* v. *Genova*, 141 Conn. 565, 572, 107 A.2d 837 (1954) (*O'Sullivan, J.*, dissenting). "[T]he state is limited to proving that the defendant has committed the offense in substantially the manner described." *State* v. *Ruiz*, 171 Conn. 264, 270, 368 A.2d 222 (1976).

"We have disapproved the practice of reading an entire statute to a jury where under the pleadings or the evidence only a portion of it is applicable. *State* v. *Ruiz*,

---

however, that an initial lawful entry followed by an unlawful remaining would be excused. For example, A enters an office building during business hours—a lawful entry since the building is open to the public—and remains, perhaps hidden, after the building is closed, with intent to steal. A is guilty of burglary. . . ." Commission to Revise the Criminal Statutes, Penal Code Comments, Connecticut General Statutes, p. 33.

[5] We do not infer that the state could not have included the "or remained unlawfully" phrase in its information. Practice Book § 618. Additionally, any time prior to or subsequent to the commencement of trial the state could have amended its information to include the "or remains unlawfully" provision, provided that such an amendment did not prejudice the substantive rights of the defendant. Practice Book §§ 623, 624.

[supra, 269–72]; *State* v. *Criscuolo,* 159 Conn. 175, 177, 268 A.2d 374 (1970)." *State* v. *Carter,* supra, 645. " 'While the court may instruct in the exact language of the statute, it should not do so where the exact statutory language might mislead the jury . . . .' " *State* v. *Criscuolo,* supra. Where, as here, the trial court's charge, in effect reciting the words of the statute, included both the "enters unlawfully" and the "remains unlawfully" statutory language, each of which may be an element of the crime of burglary; and where the information restricted the offense to "entering unlawfully" and no amendment was requested; see footnote 4, supra; the trial court erred in instructing the jury on the "remains unlawfully" disjunctive element of burglary. See *State* v. *Ruiz,* supra, 270–72.

Our conclusion that the charge was erroneous does not, however, end our analysis. " 'A charge to the jury will not be critically dissected for the purpose of discovering possible inaccuracies of statements, but the charge is to be considered, rather, as to its probable effect upon the jury in guiding them to a correct verdict in the case.' " *State* v. *Miller,* 186 Conn. 654, 661, 443 A.2d 906 (1982). "To determine whether an error in a charge constitutes reversible error, the court must consider the whole charge." *State* v. *Williams,* 182 Conn. 262, 267–68, 438 A.2d 80 (1980). In the present case the state does not dispute that should we find error in the "or remains unlawfully" phrase, the error would be of constitutional dimension. The test we must apply, therefore, is whether it is reasonably possible that the jury were misled. *State* v. *Johnson,* 188 Conn. 515, 527, 450 A.2d 361 (1982). It is the state's position that in light of the "clear and convincing" evidence of guilt of the crime charged in the information, and because there was no evidence tending to prove that the defendant entered lawfully and thereafter remained unlawful-

ly, it is not reasonably possible that the jury were mis-led. Under the circumstances presented, we find this claim unpersuasive.

In its charge, not only did the court repeatedly uti-lize the disjunctive "enters or remains unlawfully" lan-guage, it also "discussed this alternative mode for commission of the crime, effectively enlarging the offense as stated in the information";[6] *State* v. *Carter*, supra, 646; thus further exacerbating the harm to the defendant. Moreover, when, after two hours of deliber-ation, the jury requested a restatement of the defini-tions of burglary in the first and second degree, the court again repeatedly employed the "or remains un-lawfully" language. This is not a case, therefore, where, although an inapplicable section of a statute was read, the ensuing discussion was confined solely to the parameters of the information. See *State* v. *Carter*, 189 Conn. 611, 628–29, 458 A.2d 369 (1983). Nor can we conclude from the verdict itself; *State* v. *Ruiz*, supra, 272–73; or from a polling of the jury; *State* v. *Carter*, supra, 630–31; that the erroneous charge "manifestly did not affect the ultimate verdict." *State* v. *Ruiz*, supra, 273.

That the erroneous charge was prejudicial to the defendant is readily apparent from his own testimony. He stated that he entered the building lawfully and re-

---

[6] "In other words, the State must prove either that the defendant en-tered unlawfully, or regardless of how he entered, he remained there unlaw-fully. The entry must be without license or privilege to be an unlawful entry, and it must be affirmatively proved to have been so effected before there can be guilt of burglary. It does not matter how, actually, an intruder may have entered, if he did so without license or without privilege, he has en-tered unlawfully. However, even if a person should have entered a build-ing lawfully, if he had the right, or had been given the privilege, and that right has been terminated, or the permission withdrawn by someone who had a right to terminate it or withdraw it, you may still find unlawfully remaining as the basis of burglary."

mained lawfully, while the complainant testified in a manner consistent with unlawful entry. "It is the function of the jury to consider evidence, draw logical deductions and make reasonable inferences from facts proven . . . ." *State* v. *Avcollie,* 178 Conn. 450, 456, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980). Since the defendant was also convicted of sexual assault in the first degree, a finding of guilt not challenged in this appeal; see footnote 2, supra; implicit within this conviction is a rejection by the jury of the defendant's testimony that he remained lawfully within the complainant's apartment. The defendant's own testimony of his lawful entry, coupled with the erroneous instruction, effectively allowed the jury to conclude that *irrespective* of the mode of entry the defendant was guilty of burglary. The combination of the aforementioned factors could possibly result in a conviction for a crime the elements of which were not alleged in the information. See *Fahy* v. *Connecticut,* 375 U.S. 85, 91, 84 S. Ct. 229, 11 L. Ed. 2d 171 (1963).

It is true that the evidence presented would support a verdict based solely upon unlawful entry by the defendant as charged by the state. This, however, is not the issue before us; what is before us is whether it is reasonably possible that the jury were misled. See *State* v. *Rose,* 169 Conn. 683, 688–89, 363 A.2d 1077 (1975). In any event, "appellate courts are not free to revise the basis on which a defendant is convicted simply because the same result would likely obtain on retrial." *Dunn* v. *United States,* 442 U.S. 100, 107, 99 S. Ct. 2190, 60 L. Ed. 2d 743 (1979). In light of the factors delineated above, we are unable to conclude that there is no reasonable possibility that the jury were misled by the instructions. The trial court committed material and prejudicial error in its charge to the jury.

Although our conclusion necessitates a new trial on the burglary count, we discuss the remaining assignments of error since similar claims may be presented in subsequent proceedings.

The defendant's next claim, which is one of first impression in this jurisdiction, requires us to resolve a question of statutory construction concerning burglary in the first degree. At issue is the time frame within which the aggravating circumstance "armed with explosives or a deadly weapon or a dangerous instrument" must occur in relation to "enters unlawfully" within a building. It is the defendant's position that a necessary prerequisite to conviction under General Statutes § 53a-101 (a) (1) is sufficient proof by the state that he was armed *at the time of illegal entry* and that since there was no evidence on this issue, the trial court erred in denying his motion for judgment of acquittal.

The state does not dispute that there was insufficient evidence to support a finding that the defendant was armed when he entered the apartment, but construes the defendant's argument as an erroneous interpretation of the statute. It is the state's position that it is immaterial whether the defendant was armed at the time of unlawful entry, as long as he armed himself at any time while he remained unlawfully in the apartment. We agree.

"It is axiomatic that 'penal statutes . . . are to be strictly construed to protect the fundamental constitutional right to liberty.' " *State* v. *Shockley,* 188 Conn. 697, 714, 453 A.2d 441 (1982) (*Speziale, C. J.,* concurring). Equally fundamental, however, is the "principle of statutory construction that statutes are to be construed so that they carry out the intent of the legislature." *State* v. *Campbell,* 180 Conn. 557, 561, 429 A.2d 960 (1980). "Although the principle is well

established that penal statutes must be strictly construed, the application of common sense to the language of a penal law is not to be excluded in a way which would involve absurdity or frustrate the evident design of the lawgiver." *State* v. *Pastet,* 169 Conn. 13, 21-22, 363 A.2d 41, cert. denied, 423 U.S. 937, 96 S. Ct. 297, 46 L. Ed. 2d 270 (1975). "In determining the true meaning of a statute when there is genuine uncertainty as to how it should apply, identifying the problem in society to which the legislature addressed itself by examining the legislative history of the statute under litigation is helpful." *State* v. *Campbell,* supra, 562.

It is clear from our review of the comments by the commission to revise the criminal statutes that the basic rationale underlying the enactment of all of our present burglary statutes was protection against the type of invasion of premises likely to terrorize occupants.[7] The varying degrees of burglary differ only in the addition of various aggravating circumstances likely to further increase terror, and carry correspondingly increased sanctions. Thus burglary in the second degree includes the additional requirement "at night," when commission of the offense increases the alarm to the victim. Similarly, burglary in the first degree delineates two disjunctive aggravating circumstances, either of which will greatly enhance the potential for terror created by the perpetrator.[8]

---

[7] We note that while the legislative history of our burglary statutes fails to shed light on the rationale behind enactment, the comments by the commission to revise the criminal statutes clearly indicate the intended purpose of General Statutes §§ 53a-101 through 53a-103a. See Commission to Revise the Criminal Statutes, Penal Code Comments, Connecticut General Statutes, pp. 32–34. In both the house and senate proceedings addressing the enactment of our present penal code, the work and recommendations of the commission received numerous accolades. 13 H. R. Proc., Pt. 11, 1969 Sess., pp. 5033–63; 13 S. Proc., Pt. 7, 1969 Sess., pp. 3519–47.

[8] In addition to being armed with "explosives or a deadly weapon or dangerous instrument"; General Statutes § 53a-101 (a) (1); a person is guilty of burglary in

In light of this clear legislative mandate to provide increased sanctions based upon the potential degree of terror created in the occupant, it would frustrate "the evident design of the lawgiver"; *State* v. *Pastet,* supra; to construe § 53a-101 (a) (1) as *requiring* a perpetrator to be armed at the moment of illegal entry. Moreover, such a construction could easily lead to incongruous and bizarre results. It borders on the absurd to preclude a first degree burglary conviction where a perpetrator, after attaining illegal entry, arms himself with "explosives or a deadly weapon or a dangerous instrument" within the meaning of these terms; see *State* v. *Grant,* 177 Conn. 140, 145–47, 411 A.2d 917 (1979); and confronts the occupant, while sustaining a first degree conviction of a burglar who is armed upon illegal entry and yet encounters no one. Each scenario, in our view, satisfies the aggravating circumstance of being armed.

Historical considerations provide additional support for our conclusion that there is no need for simultaneity in the commission of the statutory elements "enters . . . unlawfully . . . and . . . is armed . . . ." The present statute is merely the latest edition of the common law crime of burglary, which required both a "breaking and entering." As our cases construing the phrase "breaking and entering" made clear, the fact that both elements must be established to complete the crime does not mean that both must be done at once. See *State* v. *Kohlfuss,* 152 Conn. 625, 638–39, 211 A.2d 143 (1965); *State* v. *Ward,* 43 Conn. 489, 493–94, 21 A. 665 (1876). "As to the manner of committing burglary there must be both a breaking and

the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and "in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone." General Statutes § 53a-101 (a) (2).

an entry to complete it. But they need not be both done at once; for, if a hole be broken one night, and the same breakers enter the next night through the same, they are burglars." 4 Blackstone, Commentaries, p. 226. "If each and every of the acts constituting a crime are committed, and all the evils consequent on the crime are produced, the precise order in which the acts are done cannot be material. Now burglary is the breaking and entering the house of another in the night season with an intent to commit a felony. The jury have found that, coupled with the guilty intent, the accused committed every act going to make up this crime. The accused stood not on the doing of these acts, nor on the order of doing them, except so far forth as was convenient and necessary to accomplish his guilty purpose. That this offence is burglary we can have no doubt." *State* v. *Ward,* supra, 493. If, therefore, a perpetrator, after attaining unlawful entry, arms himself within the meaning of § 53a-101 (a) (1) while remaining in the building, he has committed the aggravating circumstance necessary for a conviction of burglary in the first degree.[9]

The defendant's final argument centers on another section of the trial court's charge to the jury. He avers that the court erred by enlarging the time frame within which the jury could find that the defendant was "armed" under § 53a-101 (a) (1) to include immediate flight from the building.[10] We agree.

---

[9] Our construction of the scope of General Statutes § 53a-101 (a) (1) applies with equal force to the "remains unlawfully" method of entry. A perpetrator need not be armed at the exact moment his license or privilege to remain is extinguished, provided he arms himself within the meaning of § 53a-101 (a) (1) while he remains in the building.

[10] Twice during its charge to the jury, the trial court, seeking to define the aggravating circumstance under General Statutes § 53a-101 (a) (1), gave the following instruction: "This means simply that the defendant at some point of entering or remaining in the building, *or of immediate flight from it,* has actual physical possession of a dangerous instrument." (Emphasis added.)

Discussion of this issue makes it necessary for us to distinguish the differences between § 53a-101 (a) (1) and § 53a-101 (a) (2).[11] The aggravating circumstance under § 53a-101 (a) (2) states: "in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone." Under subsection (b) of § 53a-101, "[a]n act shall be deemed 'in the course of committing' the offense if it occurs in an attempt to commit the offense or flight after the attempt or commission." By defining the exact language utilized in § 53a-101 (a) (2), subsection (b) thus enlarges the scope of that aggravating circumstance to include attempts or flight after attempt or commission. Subsection (b), however, does not apply to § 53a-101 (a) (1), which does not contain the "in the course of committing" language defined in that subsection. The aggravating circumstance delineated in § 53a-101 (a) (1) must occur at the time of entering or remaining unlawfully or thereafter while the perpetrator remains within the building.

It is clear, therefore, that only the second aggravating circumstance as delineated in § 53a-101 (a) (2) and defined by § 53a-101 (b) includes "flight from the building" within the permissible scope of its commission. By instructing the jury that they could find the requisite aggravating circumstance within the meaning of § 53a-101 (a) (1) if they concluded that the defendant had actual physical possession of a dangerous

---

[11] Subsections (a) and (b) of General Statutes § 53a-101 state as follows: "BURGLARY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and: (1) He is armed with explosives or a deadly weapon or dangerous instrument, or (2) in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone.

"(b) An act shall be deemed 'in the course of committing' the offense if it occurs in an attempt to commit the offense or flight after the attempt or commission."

instrument while in immediate flight from the building, the trial court impermissibly enlarged an essential element of the crime as charged within the information.[12]

There is error in the trial court's charge to the jury. The judgment finding the defendant guilty of burglary in the first degree is set aside and a new trial is ordered.

In this opinion the other judges concurred.

---

[12] Because there must be a new trial we need not consider whether the trial court's error, in view of the charge as a whole, constitutes reversible error. Nor need we consider whether the defendant's failure to except to this portion of the charge should preclude it from our consideration, "or whether this error is cognizable even in the absence of a proper exception because it may have deprived the defendant of a fundamental constitutional right." *State* v. *Carter,* 189 Conn. 631, 646-47, 458 A.2d 379 (1983).