## STATE OF CONNECTICUT *v.* GEORGE MAXWELL
### (10006)

DUPONT, C. J., DALY and HEIMAN, Js.

Argued October 28—decision released December 15, 1992

*Thomas Ullmann,* public defender, for the appellant (defendant).

*Carolyn K. Longstreth,* assistant state's attorney, with whom were *David Gold,* assistant state's attorney, and, on the brief, *Michael Dearington,* state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of assault in the third degree in violation of General Statutes § 53a-61 (a) (2), as a lesser included offense of assault in the first degree in violation of General Statutes § 53a-59 (a) (1), and burglary in the first degree in violation of General Statutes § 53a-101 (a) (2).[1] The defendant claims that the judgment is fatally flawed in that (1) the state failed to produce sufficient evidence to prove the essential elements of the crime of burglary in the first degree, specifically those of intent to commit a crime, namely larceny as alleged in the information, and of inflicting bodily injury in the course of committing the offense, (2) the trial court improperly refused to admit into evidence the factual predicate underlying the victim's prior criminal convictions for violent crimes where such evidence would prove the victim's propensity for violence on the issue of initial aggressor in a claim of self-defense, and (3) the trial court incorrectly admitted rebuttal evidence concerning the defendant's employment status, the number of his dependents and the fact that he was not receiving unemployment compensation during the quarter during which the crime was committed. We affirm the trial court's judgment.

---

[1] General Statutes § 53a-101 provides in pertinent part: "(a) A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and . . . (2) in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone.

"(b) An act shall be deemed 'in the course of committing' the offense if it occurs in an attempt to commit the offense or flight after the attempt or commission. . . ."

The jury could reasonably have found the following facts. On September 17, 1988, the victim, Sixto Diaz, together with his girl friend, Maria Garcia, and their children, were in their house, a two-story, single family residence located at 272 Davenport Avenue in New Haven. Sometime between 11:30 p.m. and midnight, Diaz was asleep in an upstairs bedroom and Garcia was in the living room of the house watching television, while her eleven year old daughter was in the kitchen.

Garcia heard her daughter say something and heard a knocking at the kitchen door. Garcia went into the kitchen, again heard knocking at the door and asked in Spanish who was there. The person identified himself as "Jorge." Garcia said that she knew no one by that name. The person then responded in English that he was "George." Garcia said that she did not know anyone by that name either.

The person outside the door, later identified as the defendant, George Maxwell, began to pound and forcefully kick the door, breaking a large portion of the glass above the doorknob, and inserted his hand through the hole attempting to reach the lock. Fearing that the defendant would unlock the door, Garcia instructed her daughter to go upstairs and wake Diaz. She then retreated to the living room.

Diaz' daughter woke Diaz and told him that someone was attempting to break into the house. Diaz ran downstairs, grabbed a broom handle and entered the kitchen. The defendant still had his hand inside the door and Diaz struck his hand with the broom handle. The defendant immediately withdrew his arm.

Concerned that the defendant might attempt to enter the house through the front door, Diaz ran to the front of the house. He opened the front door and observed the defendant at the bottom of the stairs approaching the house. Diaz went down the front steps and struck

the defendant several times on the arm and shoulder with the broom handle. The defendant attempted to grab Diaz and they struggled through an iron gate onto a grassy area adjacent to the street. Diaz continued in his attempts to strike the defendant with the broom handle when Diaz suddenly stumbled. As the defendant gestured upward, Diaz observed a shiny object in the defendant's hand. The object, which was either a knife or a screwdriver at least one and one-quarter inches long, pierced the eye from the front to the back causing an injury that resulted in Diaz' loss of sight in that eye. The injury had to have been caused by a sharp object and not by blunt trauma such as a punch or a fall against an object.

After striking Diaz with the sharp object, the defendant ran from the scene and the police and an ambulance were summoned. As the medical personnel were placing Diaz in the ambulance, he observed the defendant standing across the street and identified him to a police officer as his assailant. Shortly thereafter, the defendant was arrested.

At the time of his arrest, the defendant had $40 in his possession. The defendant had left employment on September 3, 1988, two weeks before the incident, and reported no additional income for 1988.

I

The defendant first claims that the evidence was insufficient to sustain a verdict of guilty on the charge of burglary in the first degree. The defendant asserts that the evidence was insufficient with respect to the element of the offense that requires proof that the defendant intended to commit a crime within the building. He also asserts that the evidence was insufficient with respect to the element that requires proof that the bodily injuries inflicted occurred in the course of committing the offense. We disagree.

To determine the sufficiency of the evidence to sustain a conviction, we apply a twofold test. *State* v. *Cruz*, 28 Conn. App. 575, 578, 611 A.2d 457 (1992); *State* v. *Uribe*, 14 Conn. App. 388, 392–93, 540 A.2d 1081 (1988). We first construe the evidence in the light most favorable to sustaining the verdict. *State* v. *Haddad*, 189 Conn. 383, 385, 456 A.2d 316 (1983); *State* v. *Cruz*, supra. "We then determine whether, 'from that evidence and all the reasonable inferences which it yields, [the jury] could reasonably have concluded that the defendant was guilty beyond a reasonable doubt.' " *State* v. *Cruz*, supra. In this examination, we consider "whether the [trier] could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt . . . ." (Internal quotation marks omitted.) *State* v. *Haddad*, supra, 387; *State* v. *Cruz*, supra, 578–79. "In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Sommerville*, 214 Conn. 378, 390, 572 A.2d 944 (1990), quoting *State* v. *Sinclair*, 197 Conn. 574, 576, 500 A.2d 539 (1985). " 'It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence.' " *State* v. *Sinclair*, supra, 576–77.

When applying the sufficiency of the evidence test, the court must ensure that " '[e]ach essential element of the crime charged . . . be established by proof beyond a reasonable doubt, and although it is within the province of the [trier] to draw reasonable, logical inferences from the facts proven, [it] may not resort to speculation and conjecture. . . . Where it cannot be said that a rational trier of fact could find guilt

proven beyond a reasonable doubt, then, a conviction cannot constitutionally stand, as it is violative of due process under the fourteenth amendment. . . . [T]he burden rested upon the prosecution to prove the guilt of the accused, i.e., to prove each material element of the offense charged beyond a reasonable doubt.' (Citation omitted.)'' *State* v. *Cruz,* supra, 579.

We turn first to the defendant's claim that the evidence was not sufficient to support a guilty verdict for burglary in the first degree in violation of General Statutes § 53a-101 (a) (2). He argues that there was insufficient evidence to support a finding beyond a reasonable doubt that he intended to commit the crime of larceny in the building. We do not agree.

Additional facts are necessary to a resolution of this assertion. The evidence established that neither the victim nor Garcia or any other resident of the household was acquainted with the defendant in any way. No evidence was presented to suggest any prior dealings between the victim and the defendant or between the defendant and any other resident of the household. Thus, the jury could reasonably have drawn an inference that the defendant had no purpose of revenge or personal animus to motivate him to enter the Diaz house. The jury could couple this with other evidence in order to find that the defendant attempted entry with a larcenous intent. Specifically, as evidence of his larcenous intent the jury could have considered the fact that the defendant attempted to break into the house through the back door by smashing a hole in the glass and reaching in to unlock the door. See *State* v. *Sinclair,* supra, 578. Additionally, the fact that the defendant undertook to make a forced entry into the Diaz house permitted the jury to draw an inference that the defendant's purpose was theft. *State* v. *Zayas,* 195 Conn. 611, 620, 490 A.2d 68 (1985); *State* v. *Perez,* 10 Conn. App. 279, 291, 523 A.2d 508, cert. denied, 203

Conn. 810, 525 A.2d 524 (1987). The jury could also have considered the fact that the defendant carried a screwdriver or other pointed instrument as additional evidence of larcenous intent since such implements may be used for prying or as weapons if the offender encounters resistance to his larcenous attempt. See *State* v. *Zayas*, supra.

Juries are not required to leave common sense at the courtroom door. Id. From the facts established and the reasonable inferences that can be drawn therefrom, it was not unreasonable for the jury to have inferred that the defendant possessed the requisite intent to commit larceny in the Diaz house. " 'Common experience tells us that an [attempted] unlawful entry into a dwelling . . . is not without purpose. Nor are people accustomed to [attempt] to enter homes of strangers through a [locked door by smashing the glass to reach the lock] for innocent purposes. To any person of ordinary intelligence, the expected by-product of a surreptitious unlawful entry into the home of another is theft.' " *State* v. *Perez,* supra, quoting *State* v. *Zayas,* supra, 617.

We are satisfied that the evidence was sufficient for the jury to have found that the state had established beyond a reasonable doubt the element of intent to commit a larceny as the crime that the defendant intended to commit within the building.

In the same vein, the defendant further asserts that the evidence was insufficient to establish beyond a reasonable doubt that the bodily injury inflicted on the victim occurred in the course of committing the offense. The defendant posits that the bodily injury occurred only after the defendant terminated his attempt to enter the building, had broken off the encounter and was off the premises of the victim. He asserts that the altercation that occurred was a separate and distinct

occurrence initiated by the victim and was thus unrelated to his original attempt to break and enter the building. We do not agree.

General Statutes § 53a-101 (b) specifically provides that "[a]n act shall be deemed 'in the course of committing' the offense if it occurs in an attempt to commit the offense or flight after the attempt or commission." Since the defendant had not succeeded in his attempt at escaping and he was obviously visible to the victim, we cannot say that the jury improperly drew an inference that the injury to the victim occurred while the defendant was engaged in making his escape. General Statutes § 53a-101 (b).

The defendant's assertion implies that once an individual has broken off his attempt to enter a building and has left the immediate vicinity, he has broken off the crime even though he is still in a position to be seen by his victims. Once this occurs, the defendant argues that § 53a-101 (b) is no longer applicable. He posits that his effort to break off his attempt to enter the building and his subsequent attempted flight remove his conduct from that which is prohibited by the statute. We do not agree.

The issue of whether the bodily injury was inflicted during flight after the attempt or commission of the offense is an issue of fact to be determined by the jury under proper instructions by the court. The jury's function is to consider evidence, to draw logical deductions and to make reasonable inferences from facts proven. *State* v. *Gabriel,* 192 Conn. 405, 421, 473 A.2d 300 (1984); *State* v. *Johnson,* 26 Conn. App. 433, 435–36, 602 A.2d 36, cert. denied, 221 Conn. 916, 603 A.2d 747 (1992). The defendant makes no claim that the trial court improperly instructed the jury regarding the application of § 53a-101 (b). We are satisfied that the jury could have reasonably found on the evidence that

the bodily injury was inflicted on the victim by the defendant while he was in flight in order to avoid apprehension and detention.

Statutes are to be construed so that they carry out the intent of the legislature. *State* v. *Belton,* 190 Conn. 496, 505, 461 A.2d 973 (1983); *State* v. *Campbell,* 180 Conn. 557, 561, 429 A.2d 960 (1980). The fact that penal statutes must be strictly construed is well established, but the application of common sense to the language of the statutory enactment is not to be excluded in a manner that would involve an absurdity or frustrate the design of the legislature. *State* v. *Belton,* supra, 505–506; *State* v. *Ryerson,* 20 Conn. App. 572, 578, 570 A.2d 709, cert. denied, 214 Conn. 806, 573 A.2d 318 (1990). In determining the meaning of a statute, where there is genuine uncertainty as to how it should be applied, we are permitted to examine the societal problem that the statute addresses by examining the legislative history. *State* v. *Belton,* supra, 506; *State* v. *Campbell,* supra, 562.

It is clear that the purpose of burglary statutes is to prevent the kind of entry into buildings that would terrorize the occupants. *State* v. *Belton,* supra. General Statutes § 53a-101 is designed to increase punishment for the situation where the terror or risk to the occupants is increased by the presence of weapons or where bodily injury is inflicted. See id., 506–507. Thus, to conclude that, by the simple expedient of running beyond the property line and abandoning his attempt to enter the building, a defendant was no longer in flight from his attempt, would create the kind of bizarre result that we are mandated to avoid in statutory construction. Id., 507.

The evidence more than adequately established beyond a reasonable doubt that the defendant inflicted

bodily injury on the victim in the course of committing the offense. The defendant's claim to the contrary is without merit.

## II

The defendant next asserts that the trial court improperly excluded evidence of the facts underlying the victim's convictions for crimes of violence. While the defendant was permitted to elicit from the victim the fact that he had been convicted of certain crimes, the defendant was precluded by the trial court from eliciting testimony concerning the factual predicate underlying those convictions. The defendant claims that the factual basis for the convictions was admissible to show the violent character of the victim in order to establish that the victim was the initial aggressor. We disagree that the trial court improperly excluded this evidence.

The defendant bases his claim of the admissibility of the factual basis underlying the convictions on his reading of *State* v. *Miranda,* 176 Conn. 107, 405 A.2d 622 (1978). Even if we assume without deciding that *State* v. *Miranda,* supra, applies to an assault case as well as a homicide case; *State* v. *Gooch,* 186 Conn. 17, 21, 438 A.2d 867 (1982); the defendant's reliance on *Miranda* is misplaced. Our Supreme Court set forth the rule that "in a homicide prosecution where the accused has claimed self-defense, the accused may show that the deceased was the aggressor by proving the deceased's alleged character for violence. The deceased's character may be proved by reputation testimony, by opinion testimony, or by evidence of the deceased's convictions of crimes of violence, irrespective of whether the accused knew of the deceased's violent character or of the particular evidence adduced at the time of the death-dealing encounter." *State* v. *Miranda,* supra, 114. Nothing in that holding of the

Supreme Court permits the view that this allows an exploration of the factual predicate for the convictions. While the victim's violent character may be established by proof of his convictions of crimes of violence; id.; it may not be proven by evidence of other specific acts. *State* v. *Webley,* 17 Conn. App. 200, 206, 551 A.2d 428 (1988).

The admissibility of evidence designed to show the violent nature of the victim's character lies within the broad discretion of the trial court. *State* v. *Mason,* 186 Conn. 574, 580–81, 442 A.2d 1335 (1982). The resolution of issues relating to relevancy and remoteness of such evidence is left to the trial court's sound discretion. *State* v. *Payne,* 219 Conn. 93, 112, 591 A.2d 1246 (1991). We will not disturb the trial court's ruling absent a clear abuse of its discretion. Id.; *State* v. *Pollitt,* 205 Conn. 61, 91, 530 A.2d 155 (1987).

Our review of the record convinces us that the trial court properly excluded the alleged facts underlying the victim's prior criminal convictions. The defendant's right to prove the victim's violent character was properly protected by the trial court's admission of the victim's prior convictions into evidence. The trial court did not abuse its discretion.

### III

The defendant next asserts that the trial court improperly admitted as rebuttal evidence testimony that he had terminated employment several weeks prior to the incident that he had no reported wages or applications for unemployment compensation during the remainder of the quarter and that, at that time, he had a wife and eight children as dependents. The defendant claims that this evidence was irrelevant, immaterial and highly prejudicial. We do not agree.

Additional facts are necessary to a proper resolution of this claim. In an apparent attempt to eliminate need as a basis for an inference of an attempted larceny, the defendant, in his case-in-chief, introduced evidence that at the time of his arrest he had in his possession the sum of $40 for which he received a receipt from the correction facility. His claim for its admissibility was that it rebutted the inference of larcenous intent. In an attempt to negate the thrust of the defendant's evidence, the state introduced in rebuttal, evidence concerning the defendant's job status, his failure to apply for unemployment compensation and the number of his dependents. The trial court properly admitted this evidence.

" '[R]ebuttal evidence is that which refutes the evidence presented by the defense, rather than that which merely bolsters the state's case . . . .' " *State* v. *Williamson,* 206 Conn. 685, 698, 539 A.2d 561 (1988), quoting *State* v. *Lisella,* 187 Conn. 335, 337, 445 A.2d 922 (1982). Here, the defendant offered evidence in his case-in-chief concerning the amount of money that he claimed was on his person on the date of the offense. This evidence was offered by the defendant in order to ask the jury to draw the inference that he lacked the requisite larcenous intent. He himself "opened the door" to evidence concerning his financial condition. See *State* v. *Simino,* 200 Conn. 113, 123, 509 A.2d 1039 (1986). Thus, evidence concerning the financial demands on the defendant as well as his lack of income was relevant to rebut the claim. See id.

In ruling on the relevancy of any evidence, including evidence offered in rebuttal, the trial court is vested with a wide and liberal discretion. *State* v. *Buster,* 27 Conn. App. 263, 275, 606 A.2d 9, cert. granted, 222 Conn. 909, 608 A.2d 692 (1992). The decision to admit rebuttal evidence is left to the exercise of sound discretion on the part of the trial court. *State* v. *Canty,*

223 Conn. 703, 715–16, 613 A.2d 1287 (1992); *State* v. *Lisella,* supra. We will reverse a trial court's exercise of its discretion regarding the determination of relevancy only where the abuse of discretion is manifest or where an injustice appears to have been done. *State* v. *Howard,* 187 Conn. 681, 685, 447 A.2d 1167 (1982).

Nothing in the record supports the claim that the trial court abused its discretion in admitting the rebuttal evidence and the defendant's claim to the contrary is without merit.

The judgment is affirmed.

In this opinion the other judges concurred.