## STATE OF CONNECTICUT *v.* JAMES WILLEY YOUNG
## (10278)

O'CONNELL, HEIMAN and FREEDMAN, Js.

Argued November 6—decision released December 22, 1992

*Denise M. Cloutier* and *Robert S. Melvin,* special public defenders, with whom, on the brief, was *Sally S. King,* for the appellant (defendant).

*Lawrence J. Tytla,* assistant state's attorney, with whom, on the brief, were *C. Robert Satti, Sr.,* state's attorney, and *Sarah E. Steere,* law student intern, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1),[1] as a lesser included offense of murder. The defendant claims that the trial court improperly (1) omitted a supplemental instruction on self-defense when asked by the jury to explain which elements it must find proven beyond a reasonable doubt, (2) admitted expert testimony on the physical force required to cause one type of revolver to discharge, and (3) admitted an autopsy photograph of the victim. The defendant also claims that (4) the state's conduct denied the defendant his constitutional right to a fair trial, (5) the evidence introduced at trial was insufficient for a jury to have reached a verdict of guilty of intentional manslaughter, and (6) he was deprived of his constitutional right to a jury drawn or selected from a fair cross section of his community. We disagree and affirm the judgment of the trial court.

The jury could have reasonably found the following facts. During the evening of January 3, 1982, the defendant, James Willey Young, and the victim were both patrons of the G & M Cafe, a bar on Truman Street in New London. A dispute arose after the victim accused the defendant of spilling beer in his hair. The defendant and victim then left the club separately. Later that evening, however, both men returned to the club and their argument resumed. As the argument

---

[1] General Statutes § 53a-55 provides in pertinent part: "(a) A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . ."

became more heated, the defendant told the victim to remove his hand from the overcoat that the victim was wearing. The defendant took his hand out from under his own coat, exposed a large black handgun and struck the victim in the face with the gun. Other patrons in the bar ran for cover when they saw the defendant display his gun. A moment later, a shot went off, the bullet striking the victim in the right side of his back.

An ambulance crew, New London police officers and state troopers arrived at the scene. The victim had no pulse and was transported to the Lawrence and Memorial Hospital. Despite efforts to resuscitate him, the victim was pronounced dead. At the scene of the shooting, the police recovered a disfigured and "mashed" bullet. They later identified it as one fired from a .38 caliber or .357 magnum revolver.

Prior to the arrival of the police, the defendant fled. A friend drove him to Hartford. En route to Hartford, the defendant disposed of the weapon.

Six and one-half years later, on July 29, 1988, an agent of the Federal Bureau of Investigation arrested the defendant in Roanoke, Virginia. The defendant was charged with the crime of murder and pleaded not guilty.

Before the commencement of the voir dire, the defendant objected to the process by which the jury panel was drawn. He requested that the entire jury array of seventy persons be used as the panel from which he could select a jury. The court responded that there were no other jurors in the courthouse and overruled the objection. The defendant also objected that none of the eighteen venirepersons was black. The court also noted this objection.

At trial, the state introduced into evidence an autopsy photograph of the victim taken two days after his death.

The photograph depicted the face and shoulder area of the victim. The victim was unclad, with his eyes half-closed. The defendant objected to the introduction of this photograph. The objection was overruled and the defendant took an exception. The state displayed the photograph to the jury and to its witnesses.

During the trial, the defendant repeatedly character-ized the victim as violent, although conceding that he had seen the victim only twice before, did not know his name, had never spoken with him and had never seen him with a weapon. The defendant admitted that he removed the gun from his coat and struck the vic-tim. He could not remember if he had cocked the gun when he removed it from his coat. He remembered, however, that somebody bumped his arm causing the gun to fire.

To rebut the defendant's testimony, the state intro-duced the expert testimony of Trooper Robert Hatha-way. Hathaway testified that the fatal bullet had basic rifling characteristics similar to those found in Smith and Wesson, Ruger, INA, and Llama revolvers. He explained that when any of these weapons were cocked, the trigger pull decreased significantly. He also testi-fied that he was familiar with the trigger pull charac-teristics of revolvers identified as those from which the fatal shot could have been fired. He testified that he was particularly familiar with Smith and Wesson revolvers and that the trigger pull of those guns was in the range of three to four and one-half pounds when cocked and ten to fourteen pounds when not cocked. On cross-examination, Hathaway acknowledged that the range to which he testified was an average, but that the force required for trigger pull could run even higher.

After five days of trial, the jury commenced its deliberations. The jury sent a note to the court signed

by the foreperson which read, "We need a copy of the lesser charge." The trial judge recalled the jurors and reminded them of the original charge and the three lesser charges, offering to reinstruct them. The jury foreperson responded orally, "The second charge. The first lesser charge." The court indicated that charge was intentional manslaughter in the first degree and the foreman responded, "Intentional manslaughter. What are the four elements that have to be proved beyond a reasonable doubt?" The court thereupon reinstructed the jury as to the two elements of that crime. The defendant did not object to that reinstruction.[2]

The jury subsequently returned a verdict of not guilty as to the charge of murder, but guilty as to the lesser included offense of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1). The court sentenced the defendant to twenty years incarceration. This appeal followed.

I

The defendant first claims that the trial court improperly omitted a supplemental instruction on self-defense when asked by the jury to explain which elements it must find proven beyond a reasonable doubt. He argues that the trial court's failure to respond adequately to the jury's confusion as to which elements the state was required to prove beyond a reasonable doubt deprived the defendant of his right to a fair trial by jury. The defendant failed to object to the court's reinstruction to the jury as to the elements of intentional manslaughter and seeks review under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), and *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). Further, the defendant did not make the claim to the trial court that he now advances, that the question asked by the jury foreper-

---

[2] Additional facts will be set forth where they are relevant to each issue.

son about the "four elements" of intentional manslaughter clearly demonstrated the jury's confusion concerning the defense of justification. He argues that the trial court's response failed to correct this confusion. We are unpersuaded that the defendant has established his entitlement to review of this issue under the doctrine of *State* v. *Golding,* supra.

In *State* v. *Golding,* supra, 239–40, our Supreme Court articulated four conditions that must exist before a defendant may prevail on an unpreserved claim of constitutional error: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of *any one of these conditions, the defendant's claim will fail.*" (Emphasis added.) Id. We are free to focus our attention on whichever condition is most relevant to the circumstances of the particular case under review. Id., 240.

The defendant can satisfy neither the second nor the third prongs of *Golding,* that the claim is of constitutional magnitude alleging the violation of a fundamental right and that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial. The trial court's response to the jury's inquiry was adequate and appropriate under the circumstances.

After a period of deliberation, the jury sent a note to the trial court that stated: "We need a copy of the lesser charge. Signed Ronald Plourde, Foreperson." After consultation with counsel on the record, the trial court indicated its intention to reiterate the charges to the jury. The trial court indicated that it would not

explain the lesser included offenses fully, but would tell the jury what the lesser included offenses were. The jurors were brought back to the courtroom and the trial judge listed for them the principal charge and the lesser included offenses.[3] In response to the court's statement that if further explanation was desired the court would provide it, the jury foreperson requested further explanation.[4] After the court explained the two elements that the state was required to prove beyond a reasonable doubt in order to convict the defendant of the crime of intentional manslaughter in the first degree, the jury again retired to deliberate. The next day the jury returned a verdict of guilty of the lesser included offense of intentional manslaughter in the first degree. It is the foreperson's request for an explanation of the *four* elements of the offense of intentional manslaughter that generates the defendant's claim.

It is undisputed that the trial court's initial charge properly instructed the jury on the elements of intentional manslaughter in the first degree and the rules regarding self-defense and justification. It is also undisputed that the instructions delivered to the jury

---

[3] The trial court instructed the jury as follows: "I would just remind you what the charges are here and I've already discussed this with counsel. As you know, the original charge is murder. The first lesser included offense is what's known as intentional manslaughter, first degree. The second included offense would be what is known as reckless indifference manslaughter, first degree, and the third one is reckless manslaughter, second degree. Those are the four charges. *So if you have a question about any one of those charges and you want to have the law explained to you about them, let us know and we'll do that.*" (Emphasis added.)

[4] The discussion was as follows: "[Foreperson]: The second charge. The first lesser charge.

"[The Court]: Intentional manslaughter first degree?

"[Foreperson]: Intentional manslaughter. What are the *four* elements that have to be proved beyond a reasonable doubt?

"[The Court]: All right. Perhaps—gentlemen, if you have no objection, I'll go through the first charge—first manslaughter." (Emphasis added.)

Both defense counsel and the state's attorney indicated that they had no objection.

upon the foreperson's request correctly reiterated the elements of the offense. See *State* v. *Reid,* 22 Conn. App. 321, 324, 577 A.2d 1073, cert. denied, 216 Conn. 828, 582 A.2d 207 (1990).

The defendant's reliance on *State* v. *Fletcher,* 10 Conn. App. 697, 525 A.2d 535 (1987), aff'd, 207 Conn. 191, 540 A.2d 370 (1988), is misplaced. Unlike the situation here, the jury in *State* v. *Fletcher,* supra, specifically included in a request that it be reinstructed concerning the effect of self-defense on the verdict. The trial court refused to honor that request because it did not come from the jury as an entity and the trial court was of the opinion that unanimity in the request was a requirement. We reversed, holding that its failure to reinstruct when requested, even though the request was not unanimous, violated the defendant's right to a fair trial and due process. Id., 705. Here, the trial court responded to the inquiry of the jury. Unlike *State* v. *Fletcher,* supra, 707, the jury in the present case did not ask for a reinstruction on the elements of self-defense or otherwise evince confusion on the law relating to that defense. *State* v. *Reid,* supra, 324–25. The trial court properly instructed the jury, thus fulfilling its obligation under Practice Book § 864.[5] See id. Additionally, the record clearly reflects that the jury and its foreperson were aware of their right to request supplemental instructions if required, and, after the trial court reinstructed the jury on the elements of the lesser included offense, the jury did not request further amplification or clarification.

Absent a request by the jury seeking further instruction on the concept of self-defense or justification, or

---

[5] Practice Book § 864 provides: "If the jury, after retiring for deliberations, request additional instructions, the judicial authority, after notice to the parties, shall recall the jury to the courtroom and give additional instructions necessary to respond properly to the request or to direct the jury's attention to a portion of the original instructions."

clear indication evincing confusion on the law relating to that defense, the defendant's constitutional rights are not abridged by the failure to reinstruct on the defense. Id.

Because there was no clear deprivation of a fundamental constitutional right, we decline to review the defendant's claim. *State* v. *Golding,* supra; *State* v. *Reid,* supra. The court did not improperly fail to recharge sua sponte on the self-defense doctrine under the circumstances of this case. *State* v. *Golding,* supra; *State* v. *Reid,* supra.

## II

The defendant next asserts that the trial court improperly admitted expert testimony concerning the physical force required to cause a revolver to discharge. We disagree.

Additional facts are necessary to a proper resolution of this claim. At the scene of the homicide, the police recovered a 112.2 copper-jacketed bullet. The bullet was found resting on the chest of the victim. The bullet was taken to the state forensic laboratory and examined by Hathaway, a member of the Connecticut state police who was employed as a firearm and tool mark examiner at the laboratory. On the basis of his examination of the bullet, Hathaway testified that the bullet was of the caliber that could be fired from either a .38 special or a .357 magnum revolver. He was able further to conclude, on the basis of the rifling characteristics of the bullet, that it possibly had been fired from a revolver manufactured by Smith and Wesson, Ruger, INA or Llama.

In the course of the defendant's testimony, he claimed that he could not recall whether he had cocked the weapon. He remembered, however, that during the melee someone struck his arm and the weapon discharged.

In his testimony, the defendant offered two separate scenarios of what had occurred. In the first, he asserted that the victim was the initial aggressor and that he acted in self-defense. In the second, he asserted that some unknown person had bumped his arm, "causing the gun to go off," which is inconsistent with his first assertion.

The testimony of Hathaway to which the defendant now objects occurred in the state's rebuttal. The state recalled Hathaway who testified as to the mechanics of cocking revolvers and also testified that a cocked weapon requires substantially less pressure on the trigger to discharge. The evidence offered by the state was relevant to negate the defendant's claim of accidental discharge of the weapon after being "bumped."

" '[R]elevant evidence is evidence that in some degree advances the inquiry. It is material and probative.' " *State* v. *Dabkowski,* 199 Conn. 193, 206, 506 A.2d 118 (1986); see also *State* v. *Marra,* 222 Conn. 506, 521, 610 A.2d 1113 (1992). " '[R]ebuttal evidence is that which refutes the evidence presented by the defense, rather than that which merely bolsters the state's case . . . .' " *State* v. *Williamson,* 206 Conn. 685, 698, 539 A.2d 561 (1988), quoting *State* v. *Lisella,* 187 Conn. 335, 337, 445 A.2d 922 (1982). The issue of the admissibility of rebuttal evidence as it relates to relevancy is a matter addressed to the sound discretion of the trial court. *State* v. *Canty,* 223 Conn. 703, 715–16, 613 A.2d 1287 (1992); *State* v. *Buster,* 27 Conn. App. 263, 275, 606 A.2d 9, cert. granted, 222 Conn. 909, 608 A.2d 692 (1992). We will not disturb the trial court's ruling absent a clear abuse of discretion; *State* v. *Pollitt,* 205 Conn. 61, 91, 530 A.2d 155 (1987); *State* v. *Maxwell,* 29 Conn. App. 704, 715–16, 618 A.2d 43 (1992); or unless it appears that an injustice has been done. *State* v. *Milner,* 206 Conn. 512, 518, 539 A.2d 80 (1988). The references to the trigger pull of a .38 caliber Smith and

Wesson revolver illustrated the differences between a weapon that had been cocked and one that had not. The defendant "opened the door" to this testimony by asserting that the gun accidentally discharged after he had been bumped. Even the reference to a specific manufacturer met the test of relevancy. The admission of the evidence was thus proper.

### III

The defendant also argues that the trial court improperly admitted an autopsy photograph of the victim. He argues that the prejudicial impact of the photograph outweighs its probative value. We do not agree.

Our Supreme Court has stated on a number of occasions that photographs that " 'have a reasonable tendency to prove or disprove a material fact in issue or shed some light upon some material inquiry' are not rendered inadmissible simply because they may be characterized as 'gruesome.' " *State* v. *Piskorski,* 177 Conn. 677, 700, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 194 (1979); see also *State* v. *Haskins,* 188 Conn. 432, 452, 450 A.2d 828 (1982); *State* v. *Suarez,* 23 Conn. App. 705, 711, 584 A.2d 1194 (1991). Here, the thrust of the defendant's objection to the trial court was that the body depicted in the photograph was unclad and that it was "highly prejudicial at this point." The state offered the photograph as an accurate representation of how the decedent looked when a witness observed him in the barroom after the shooting before he was removed. Witnesses testified that the photograph fairly and accurately depicted how the decedent appeared after the shooting, other than as to his clothing.

The admission of the photograph into evidence required that the trial court exercise its discretion. See *State* v. *Doehrer,* 200 Conn. 642, 649, 513 A.2d 58 (1986); *State* v. *Scuilla,* 26 Conn. App. 165, 170–71, 599

A.2d 741 (1991). Here, the defendant did not object on the ground that the picture was gruesome or likely to inflame the prejudice of the jury. Thus, we are left with the fact that the admissibility of the photograph is addressed to the discretion of the trial court. *State* v. *Haskins,* supra, 453; *State* v. *Scuilla,* supra, 171. We will reverse an exercise of the trial court's discretion only where the abuse of discretion is manifest or where injustice appears to have been done. *State* v. *Milner,* supra; *State* v. *Maxwell,* supra. Nothing in the record supports the defendant's claim that the admission of the photograph into evidence was improper or that the state improperly used the photograph. The photograph depicting the decedent was probative of the identity of the victim about whom the witnesses were testifying and on whom the autopsy was performed. The trial court did not abuse its discretion by determining that the probative value of the photograph was not outweighed by any potential prejudice. The defendant's claim is without merit.

## IV

The defendant next claims that the state's conduct violated his constitutional right to a fair trial. He argues that the state's conduct was fundamentally unfair and did not afford him the due process guaranteed by both the state and federal constitutions. Having failed to raise this claim at trial, the defendant seeks to have this court afford review of the alleged prosecutorial misconduct under *Golding.* He asserts that the record is adequate to review the prosecutorial misconduct that he claims occurred throughout the trial and that this claim is of constitutional magnitude alleging the violation of a fundamental right.[6] We are unpersuaded

---

[6] The defendant argues that the prosecutorial misconduct was committed throughout the judicial proceeding and is recorded in the official trial transcript. He alleges that the transcript reveals this misconduct in the form of the prosecutor's personal opinions, injection of extraneous and prejudi-

that the defendant has satisfied the third prong of *Golding,* and we thus decline to afford review.

We first observe that except for a few isolated instances where the defendant's counsel objected to the state's questions or comments and the trial court either sustained the objection or the state's attorney withdrew the question or comment, the record is barren of any objections raising the specter of prosecutorial misconduct. The acts of prosecutorial misconduct now alleged by appellate counsel failed to disturb the defendant's experienced trial counsel in that he neither objected to them nor sought relief by way of curative instructions or by motion for mistrial. See *State* v. *Lucci,* 25 Conn. App. 334, 348, 595 A.2d 361, cert. denied, 220 Conn. 913, 597 A.2d 336 (1991).

We will not afford *Golding* review to claims of prosecutorial misconduct where the record does not disclose a pattern of misconduct pervasive throughout the trial or conduct that was so blatantly egregious that it infringed on the defendant's right to a fair trial. *State* v. *Somerville,* 214 Conn. 378, 393, 572 A.2d 944 (1990); *State* v. *Hall,* 28 Conn. App. 771, 778, 612 A.2d 135,

---

cial matters and facts not in evidence, appeals to juror sympathy, and improper and inflammatory remarks made during closing argument. Examples of the claimed misconduct are that the state's attorney improperly expressed his own personal opinions during closing arguments by stating "I don't know whether the judge is going to instruct you on self-defense, but self-defense has nothing to do with this case, nothing to with this case at all." He also alleges that this improper conduct of injecting personal opinion occurred during cross-examination of the defendant when the state's attorney questioned the defendant in the following manner: "Are you telling us that you might have accidentally cocked [the weapon] when you pulled it out? You're not telling us that, are you? . . . You know that when you cock the gun you have to pull the thing back, the thing on the back of the gun? You know that, don't you? I mean, you've seen that on TV a thousand times?" A further example of the claimed misconduct in the nature of improperly arousing juror sympathy occurred when the state's attorney presented witnesses, who already were crying, with a photograph of the victim.

cert. denied, 224 Conn. 904, 615 A.2d 1045 (1992); *State* v. *Lucci*, supra, 349. Here, the defendant confuses effective advocacy with prosecutorial misconduct and attempts to make vigorous argument and cross-examination a vehicle for his claim of improper prosecutorial conduct.

The claimed misconduct here consisted at most of isolated and brief episodes that neither revealed a pattern of conduct repeated throughout the trial nor were blatantly egregious. *State* v. *Somerville,* supra; *State* v. *Hall,* supra. Thus, we decline to afford review since the defendant has failed to satisfy the threshold for review mandated by *State* v. *Golding,* supra.

## V

The defendant asserts that the evidence introduced at trial was insufficient for a jury reasonably to find the defendant guilty of intentional manslaughter. In making this assertion, he posits that from the evidence adduced at trial it is apparent that the state did not meet its burden of proving beyond a reasonable doubt that he intended to cause serious physical injury to the victim. In addition, he argues that the state failed to introduce sufficient evidence to satisfy its burden of disproving beyond a reasonable doubt that his reactions were in self-defense. We disagree.

To determine the sufficiency of the evidence to sustain a conviction, we apply a twofold test. *State* v. *Cruz,* 28 Conn. App. 575, 578, 611 A.2d 459 (1992); *State* v. *Uribe,* 14 Conn. App. 388, 392–93, 540 A.2d 1081 (1988). We first construe the evidence in the light most favorable to sustaining the verdict. *State* v. *Haddad,* 189 Conn. 383, 385, 456 A.2d 316 (1983); *State* v. *Cruz,* supra. "We then determine whether, 'from the evidence and all the reasonable inferences which it yields, [the jury] could reasonably have concluded that the defendant was guilty beyond a reasonable doubt.' " *State* v. *Cruz,* supra.

In this review, we consider "whether the [trier] could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt . . . ." (Internal quotation marks omitted.) *State* v. *Haddad,* supra, 387; *State* v. *Cruz,* supra, 579. Since we have long held to the concept that circumstantial evidence may be treated in the same way as direct evidence, the probative force of the evidence is not diminished if it consists in whole or in part of evidence circumstantial in nature. *State* v. *Somerville,* supra, 390; *State* v. *Sinclair,* 197 Conn. 574, 576–77, 500 A.2d 539 (1985); *State* v. *Maxwell,* supra, 708. " 'It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence.' " *State* v. *Sinclair,* supra.

When applying the sufficiency of the evidence test, the court must ensure that "[e]ach essential element of the crime charged . . . be established by proof beyond a reasonable doubt, and although it is within the province of the [trier] to draw reasonable, logical inferences from the facts proven, [it] may not resort to speculation and conjecture. . . . Where it cannot be said that a rational trier of fact could find guilt proven beyond a reasonable doubt, then, a conviction cannot constitutionally stand, as it is violative of due process under the fourteenth amendment [to the constitution of the United States]. . . . [T]he burden rested upon the prosecution to prove the guilt of the accused, i.e., to prove each material element of the offense charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Maxwell,* supra, 708–709, quoting *State* v. *Cruz,* supra.

We have set forth in some detail the facts that the jury reasonably could have found in support of its guilty verdict, as to both elements of the crime of intentional

manslaughter. The jury was free to disbelieve the defendant's claim of self-defense and to conclude that, on the basis of the evidence, the defendant reasonably could not have concluded that the victim was about to employ deadly force against him. General Statutes § 53a-19 (a).

We are satisfied, on the basis of the evidence and the reasonable and logical inferences to be drawn therefrom, that the cumulative effect of the evidence was more than sufficient to justify the jury's rendering the guilty verdict. See *State* v. *Bailey,* 209 Conn. 322, 351, 551 A.2d 1206 (1988); *State* v. *Tinsley,* 24 Conn. App. 685, 692, 591 A.2d 448, cert. denied, 220 Conn. 902, 593 A.2d 968 (1991). The defendant's claim to the contrary is without merit.

## VI

The defendant's final claim is that he was deprived of his constitutional right to a jury drawn and selected from a fair cross section of his community. At the beginning of the voir dire, the defendant objected to the process of selecting jurors from a panel consisting of only eighteen venirepersons. The defendant argued that as a young black man charged with a serious crime, he was entitled to have the whole array of seventy potential jurors assembled to begin the selection process. The trial court responded that no other means were available for selecting jurors and overruled the objection. He never raised the claim again, even though a second panel was used to complete the selection of the jury. He also objected that none of the eighteen venirepersons was black. He argues that because of the manner in which the jury selection process was conducted, he had no means of knowing whether the next group of jury candidates would include black representation. The trial court noted this objection. The defendant alleges that he has been denied his due process right to select

his jury from a fair cross section of the community under the standards set forth in *Duren* v. *Missouri,* 439 U.S. 357, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979). Because the defendant failed to present evidence to support his claim that the jury array did not provide a fair and representative cross section of the community, the trial court acted properly in denying the defendant's objection to the first jury panel.

" 'In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.' " *State* v. *Tillman,* 220 Conn. 487, 492, 600 A.2d 738 (1991), cert. denied, U.S. , 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992), quoting *Duren* v. *Missouri,* supra, 364. The defendant bears the burden of establishing an adequate record to support a challenge to a jury array. *State* v. *Tillman,* supra, 496; *State* v. *Mack,* 197 Conn. 629, 635 n.6, 500 A.2d 1303 (1985); *State* v. *Frazier,* 185 Conn. 211, 218, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982). A defendant cannot prevail on his constitutional challenge to a jury array if he fails to offer sufficient evidence to satisfy the *Duren* test. *State* v. *Tillman,* supra. "A challenge to a jury array will fail if the defendant presents no evidence to the court." Id.; *State* v. *Acquin,* 187 Conn. 647, 681, 448 A.2d 163 (1982), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570, 77 L. Ed. 2d 1411 (1983).

By his failure to present evidence to satisfy his burden under *State* v. *Acquin,* supra, the defendant cannot prevail in this attack on the jury array. He has thus

failed to meet his burden of establishing a prima facie violation of the fair cross section requirement. *State* v. *Tillman,* supra, 498; *State* v. *Couture,* 218 Conn. 309, 316–316A, 589 A.2d 343 (1991).

The judgment is affirmed.

In this opinion the other judges concurred.