### STATE OF CONNECTICUT v. ERIC ASH
### (11438)

FOTI, HEIMAN and SPEAR, Js.

---

Argued December 13, 1993—decision released March 22, 1994

*Ramona S. Carlow,* special public defender, for the appellant (defendant).

*John A. East III,* deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Herbert E. Carlson, Jr.,* senior assistant state's attorney, for the appellee (state).

SPEAR, J. The defendant, Eric Ash, appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1).[1] The defendant claims that the trial court improperly (1) concluded that the evidence presented by the state was sufficient to disprove beyond a reasonable doubt the defendant's defense of justification, (2) concluded that the evidence

---

[1] The defendant was charged by substitute information with the crime of murder in violation of General Statutes § 53a-54a (a). General Statutes § 53a-54a (a) provides in pertinent part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ." He was convicted, however, of the lesser included offense of manslaughter in the first degree by way of intent to cause serious physical injury in violation of General Statutes § 53a-55 (a) (1).

General Statutes § 53a-55 (a) provides in pertinent part: "A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person . . . ."

presented by the state was sufficient to sustain the defendant's conviction of manslaughter in the first degree, (3) instructed the jury as to the duty to retreat, and (4) deprived the defendant of his federal and state constitutional rights to due process by marshaling the evidence in its jury charge. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On April 3, 1991, at approximately 8:30 p.m., Vincent Ellison was stabbed to death at the doorway to his apartment. The victim's apartment is located on the first floor of a dilapidated, brick building at 500 Ann Street in Hartford. The front entrance to the building opens into a large hallway on the first floor and there are two apartments located on the left side of the hallway that are visible from the front entrance. The victim's apartment was the first one on the left and James Osborne's was the second. Beyond Osborne's apartment is a short corridor leading to another apartment, not visible from the front entrance. The victim's cousin, Oscar Steve Anglin, lived in the third apartment.

The defendant frequently visited the victim at his apartment. On April 3, 1991, the victim, the defendant and the victim's cousin, Michael Antoine Nixon, were present in the victim's apartment. The three men spent the afternoon drinking alcohol and taking drugs. At about 5:30 p.m., the defendant left the apartment to "hustle" some money in order to obtain more drugs. He returned shortly thereafter with two sweaters he had shoplifted from a local store. At about 6 p.m., the victim sent Nixon out with directions to sell the sweaters and to purchase more drugs with the proceeds.

When Nixon failed to return within the hour, the defendant became concerned about Nixon's absence and expressed this concern to the victim several times.

The victim became angry with the defendant for mistrusting his cousin. He threatened to harm the defendant if he did not leave the apartment. The defendant then ran out of the victim's apartment into the hallway and knocked on the door to Osborne's apartment. He did not wait for Osborne to answer because he thought the victim was pursuing him with a knife. He continued down the hallway and knocked on Anglin's door. When Anglin opened the door he saw that the defendant was carrying a large butcher knife.[2] The defendant entered Anglin's apartment and pleaded with him to calm the enraged victim. Anglin then stepped into the hallway to speak with the victim, who was carrying a broomstick. Anglin had shut the door behind him and the defendant locked the door from the inside. After speaking with Anglin for approximately seven to eight minutes, the victim turned and went down the hallway in the direction of his apartment. The defendant let Anglin return to his apartment and the defendant then decided to leave Anglin's apartment and to retrieve his shoes and clothes from the victim's apartment before he left the building.

Osborne, who had overheard the voices of the defendant, the victim and Anglin coming from the direction of Anglin's apartment, opened his apartment door to see what was going on in the hallway. Osborne saw the victim first, standing in front of Osborne's apartment door, holding a broomstick and shouting loudly about

---

[2] Shortly after the incident Anglin told one or more police officers at the Hartford police station that earlier in the evening of April 3, 1991, at about 5 p.m., he had interceded when the defendant and the victim were threatening each other with knives. He stated that the butcher knife that the defendant was carrying when he knocked on Anglin's door at approximately 8 p.m. was the same knife he had seen the victim holding earlier.

At trial, Anglin testified that he had no recollection of speaking with the Hartford police on April 3, 1991. He also testified that the defendant did not have a knife in his hand when he knocked at his door at approximately 8 p.m.

"kick[ing the defendant's] ass." Osborne then saw the defendant walking down the hallway from the direction of Anglin's apartment with a knife in his hand. The defendant came face-to-face with the victim and stated that he was tired of his threats and that he was not going to take it any longer. At that point, the victim assumed a karate stance holding the stick with both hands and said to the defendant, "Come on, bitch, come on."

The victim then swung the stick at the defendant, hitting him in the shoulder and the defendant thrust the knife at the victim. The men fought back and forth from the doorway of Osborne's apartment toward the front entrance of the building and back to the doorway of the victim's apartment. At some point during the fight, the knife and stick fell to the hallway floor.

After several minutes of fistfighting, the victim lost his footing and fell backward onto the floor and across his apartment's threshold. The victim was lying on his back with his legs extended into the hallway and his upper torso inside his apartment. The defendant ended up on top of the victim, straddling him, while the victim struggled to push or kick the defendant off of him. In the midst of the struggle, the defendant picked up the knife from the hall floor and fatally stabbed the victim. The defendant then went into Osborne's apartment and asked for a pair of shoes. When Osborne told the defendant that he could not believe he had stabbed the victim, the defendant responded, "I did it, and I'll do it again." The defendant then left Osborne's apartment with the knife and a pair of Osborne's shoes, went next door to the victim's apartment to retrieve his jacket, and fled the building.

When arrested, the defendant told the police, "I had to stab him; I had to stab him." At trial, however, the defendant testified that he did not recollect actually

stabbing the victim although he did recall thrashing at the victim with a knife in his hand. He claimed to have been scared and confused and to have acted in self-defense. After a jury trial, the defendant was found not guilty of murder and was convicted of the lesser included offense of manslaughter in the first degree. The trial court sentenced the defendant to a total effective sentence of twenty years. This appeal followed.

## I

The defendant first claims that the evidence introduced at trial was insufficient to disprove his defense of justification beyond a reasonable doubt. We disagree.

We employ a two part test in reviewing claims relating to the sufficiency of the evidence. *State* v. *Young,* 29 Conn. App. 754, 767, 618 A.2d 65 (1992), cert. denied, 225 Conn. 904, 621 A.2d 287 (1993); *State* v. *Cruz,* 28 Conn. App. 575, 578, 611 A.2d 457 (1992). We first construe the evidence presented at trial in a light most favorable to sustaining the verdict. *State* v. *Young,* supra; *State* v. *Cruz,* supra. "We then determine whether, from the evidence and all the reasonable inferences which it yields, [the jury] could reasonably have concluded that the defendant was guilty beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Young,* supra;[3] see also *State* v. *Joyner,* 225 Conn. 450, 455, 625 A.2d 791 (1993); *State* v. *Baldwin,* 224 Conn. 347, 368, 618 A.2d 513 (1993); *State* v. *Crosswell,* 223 Conn. 243, 249, 612 A.2d 1174 (1992).

---

[3] Because circumstantial evidence may be treated in the same manner as direct evidence, the probative force of the evidence is not diminished if it consists in whole or in part of evidence circumstantial in nature. *State* v. *Somerville,* 214 Conn. 378, 390, 572 A.2d 944 (1990); *State* v. *Sinclair,* 197 Conn. 574, 576–77, 500 A.2d 539 (1985); *State* v. *Maxwell,* 29 Conn. App. 704, 708, 618 A.2d 43 (1992), cert. denied, 225 Conn. 904, 621 A.2d 287, cert. denied, U.S. , 113 S. Ct. 3057, 125 L. Ed. 2d 740 (1993). It is not one fact, but the impact of a multitude of facts that establishes guilt in a case involving substantial circumstantial evidence. *State* v. *Sinclair,* supra.

At trial, the defendant claimed that he was acting in self-defense when he stabbed the victim to death. "Self-defense is raised by way of justification, and when such defense is asserted 'the state shall have the burden of disproving such defense beyond a reasonable doubt.' General Statutes § 53a-12 (a) . . . ." (Citations omitted.) *State* v. *Gelormino,* 24 Conn. App. 556, 561, 590 A.2d 476, cert. denied, 219 Conn. 913, 593 A.2d 138 (1991); *State* v. *Jarrett,* 218 Conn. 766, 772, 591 A.2d 1225 (1991); *State* v. *Deptula,* 31 Conn. App. 140, 147, 623 A.2d 525, appeal dismissed, 228 Conn. 852, 635 A.2d 812 (1993). The defendant maintains that the state failed to introduce sufficient evidence to disprove beyond a reasonable doubt the elements of self-defense as set forth in General Statutes § 53a-19.[4]

---

[4] General Statutes § 53a-19 provides: "(a) Except as provided in subsections (b) and (c) of this section, a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person assisting such peace officer at his direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he abstain from performing an act which he is not obliged to perform.

"(c) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person not-

A person is justified in using deadly physical force, under the self-defense statute, § 53a-19 (a), only when he reasonably believes such force to be necessary because he "reasonably believes that [another] person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm." Even then, under § 53a-19 (b) and (c), a person is not justified in using deadly physical force on another person if (1) he knows that he can avoid the necessity of using such force with complete safety by retreating, (2) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, (3) he is the initial aggressor, or (4) the physical force involved was the product of a combat by agreement. Section 53a-19 " 'presents a question of fact about what the defendant himself reasonably believed about his exposure to jeopardy under the circumstances. *State* v. *DeJesus,* 194 Conn. 376, 389, 481 A.2d 1277 (1984); *State* v. *Corchado,* 188 Conn. 653, 663, 453 A.2d 427 (1982).' " *State* v. *Garrison,* 203 Conn. 466, 470, 525 A.2d 498 (1987).

The jury was free to disbelieve the defendant's claim of self-defense and to conclude beyond a reasonable doubt that the defendant could not reasonably have believed that he was faced with an imminent use of physical force by the victim or that the degree of physical force he used against the victim was necessary to defend himself. General Statutes § 53a-19 (a); see *State* v. *Bellino,* 31 Conn. App. 385, 392–93, 625 A.2d 1381, cert. granted, 226 Conn. 917, 628 A.2d 988 (1993). At the time of the altercation in the hallway that resulted in his death, the victim was armed only with a broomstick. The defendant, in contrast, was armed with a large butcher knife. Both men eventually lost their

withstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

weapons before the victim slipped backward and fell across the threshold of his apartment. At that point, the victim was unarmed, lying on his back, with his upper torso, including his arms and hands, inside the apartment. The defendant was on top of the victim, straddling him. The victim could not reach either the knife or broomstick and tried unsuccessfully to kick the defendant off of him. The defendant, although not threatened with deadly physical force or great bodily harm, reached into the hallway, grabbed the butcher knife, and, while he straddled the unarmed victim, stabbed him three times.

The evidence also supports the conclusion that the defendant was in a position to avoid the use of deadly physical force by retreating with complete safety. General Statutes § 53a-19 (b) (1). The victim's apartment was located immediately inside the front entrance of the building. Thus, the defendant could have gotten up and safely exited the building through the front entrance once he realized the victim was unarmed and trapped beneath him. The defendant, however, did not safely retreat from the scene at the first opportunity but instead fatally stabbed the victim before exiting the building via the front entrance. The defendant also could have sought refuge in Anglin's apartment, where he had initially gone when the victim came after him with a knife earlier in the evening. Despite the defendant's claims to the contrary, the jury reasonably could have concluded that a retreat in complete safety was available and that the defendant knew one existed.

The jury also reasonably could have concluded from the evidence presented that the defendant was not justified in using deadly force on the victim because he had either provoked the victim, was the initial aggressor, or because he and the victim had engaged in a combat by agreement. See General Statutes § 53a-19 (c) (1) through (3). When the defendant left the safety of

Anglin's apartment, armed with a large butcher knife, he immediately confronted the victim. He told the victim that he was "tired of his bullshit" and that he was "not going to take it any longer." The defendant then challenged the victim "to shoot his best shot," thus provoking the victim to swing the broomstick at the defendant and strike him on the shoulder.

We are satisfied, on the basis of the evidence and the reasonable and logical inferences to be drawn therefrom, that the cumulative effect of the evidence was more than sufficient to support the jury's conclusion that the state had met its burden of disproving the defense of justification. The defendant's claim to the contrary is without merit.

## II

The defendant next claims that the evidence introduced at trial was insufficient for a jury reasonably to find the defendant guilty of manslaughter in the first degree.[5] He asserts that the evidence adduced at trial demonstrates that the state did not meet its burden of proving beyond a reasonable doubt as required by § 53a-55 (a) (1) that he intended to cause serious physical injury to the victim. We disagree.

The standard of review for a sufficiency of the evidence claim is set forth in part I. "When applying the sufficiency of the evidence test, the court must ensure that [e]ach essential element of the crime charged . . . be established by proof beyond a reasonable doubt, and although it is within the province of the [trier] to draw reasonable, logical inferences from the facts proven, [it] may not resort to speculation and conjecture. . . . Where it cannot be said that a rational trier of fact could find guilt proven beyond a reasonable doubt, then, a conviction cannot constitutionally stand, as it is viola-

_____

[5] See footnote 1.

tive of due process under the fourteenth amendment [to the constitution of the United States]. . . . [T]he burden rested upon the prosecution to prove the guilt of the accused, i.e., to prove each material element of the offense charged beyond a reasonable doubt. . . . *State* v. *Maxwell,* [29 Conn. App. 704, 708–709, 618 A.2d 43 (1992), cert. denied, 225 Conn. 904, 621 A.2d 287, cert. denied,     U.S.     , 113 S. Ct. 3057, 125 L. Ed. 2d 740 (1993)], quoting *State* v. *Cruz,* supra." (Internal quotation marks omitted.) *State* v. *Young,* supra, 768.

In order to convict the defendant of manslaughter in the first degree, the state was required to prove beyond a reasonable doubt that (1) the defendant intended to cause serious physical injury to the victim, and (2) with that intent, the defendant caused the victim's death. See General Statutes § 53a-55 (a) (1). The intent to cause serious physical injury required for a conviction of manslaughter in the first degree under § 53a-55 (a) (1), by definition, "require[s] a jury's finding that the defendant caused a 'physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of a bodily organ.' General Statutes § 53a-3 (4)." *State* v. *Allen,* 28 Conn. App. 81, 89, 611 A.2d 886, cert. denied, 223 Conn. 920, 614 A.2d 826 (1992).

The defendant's argument that the evidence was insufficient to establish his intent to cause a serious physical injury is flawed. "Intent may be, and usually is, inferred from conduct. . . . The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Baldwin,* supra, 368. "The intent of the actor is a question for the trier of fact, and the conclusion drawn by the trier in this regard should stand unless it is an unreasonable one." *State*

v. *Holley,* 174 Conn. 22, 26, 381 A.2d 539 (1977); see also *State* v. *Allen,* supra; *State* v. *Woods,* 25 Conn. App. 275, 281, 594 A.2d 481 (1991). "[A] factfinder may infer an intent to cause serious physical injury from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading up to and immediately following the incident." *State* v. *Allen,* supra, 89–90.

In the present case, there was sufficient evidence from which the jury reasonably could infer the requisite intent to cause serious physical injury to the victim. There was evidence that the defendant approached the victim wielding a large butcher knife, confronted the victim face-to-face and told him that he was tired of his threats and he "wasn't going to take it any longer," and then challenged the victim "to shoot his best shot." There was also evidence that during their altercation, the victim slipped backward and fell and the defendant ended up on top of him, straddling him. The jury heard testimony that, once the victim was on his back, both men were unarmed and only the defendant could reach the knife. The defendant then picked up the knife and stabbed the victim, who was still unarmed, in the chest three times. The jury also had before it the testimony of the medical examiner that these three stab wounds to the upper left chest directly caused the victim's death. Additionally, the jury heard testimony that after the defendant stabbed the victim, he told Osborne, "I did it and I'll do it again," entered the victim's apartment to retrieve his jacket, and fled the building, the knife still in his hand.

Moreover, the jury had before it the defendant's testimony and the testimony of his expert on the issue of the defendant's intent. The defendant maintained that the stabbing was his reaction to the victim's violent hitting and kicking and not evidence of his intent. The defendant's expert explained that at the time of the

stabbing, the defendant "was experiencing serious and severe disruption of his feelings" caused by what he perceived as a life threatening situation. The jury apparently rejected this testimony. The determination of the credibility of a defendant or an expert witness and the weight to be accorded their testimony is within the province of the jury. See, e.g., *State* v. *Salz,* 226 Conn. 20, 38, 627 A.2d 862 (1993); *State* v. *Raguseo,* 225 Conn. 114, 123, 622 A.2d 519 (1993); *Sharp* v. *Wyatt, Inc.,* 31 Conn. App. 824, 843, 627 A.2d 1347 (1993). When conflicting explanations are presented, the jury is not required to accept the testimony and inferences offered on behalf of the defendant. See *State* v. *Sauris,* 227 Conn. 389, 402, 631 A.2d 238 (1993); *State* v. *Salz,* supra. Thus, the jury in the present case was free to reject the testimony of the defendant and his expert, in full or in part, and find persuasive the state's version of events.

The evidence presented at trial was more than sufficient for the jury reasonably to have inferred that the defendant intended to cause serious physical injury to the victim, and therefore to permit a conviction of manslaughter in the first degree.

### III

The defendant further claims that the trial court improperly instructed the jury on the duty to retreat imposed by General Statutes § 53a-19 (b). He argues that the instruction as a whole failed to direct the jury to evaluate the defendant's subjective knowledge of the availability of retreat. We disagree.

The state contends that we should not entertain this issue because the defendant failed to take an exception to the jury instruction pursuant to Practice Book § 852 and further failed to request review under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). We disagree with the state. Although at trial the defend-

ant did not take an exception to that portion of the jury instruction he now attacks, he did preserve his claim by filing a proper request to charge with respect to the issue of self-defense pursuant to Practice Book § 852.[6]

During its charge to the jury on the issue of self-defense, the trial court properly instructed the jury by quoting the relevant statutory language: "[A] person is not justified in using deadly physical force upon another person *if he knows* that he can avoid the necessity of using such force with complete safety . . . by retreating . . . ." (Emphasis added.) General Statutes § 53a-19 (b). In its explanation to the jury of that statutory language, however, the trial court misstated the duty to retreat. After reciting the statutory language, the trial court stated: "As to retreating with complete safety, *you must consider what was reasonable for the defendant to perceive was available as retreat* or if none was available without the use of physical force, what degree of physical force was reasonably necessary to make one available. Now, in this connection, you can realize what you are doing is attempting to stand in the shoes of the defendant, *as you would perceive a reasonable person to view the same situation, under the same conditions.*" (Emphasis added.) The defendant challenges this portion of the charge as it improperly interjected an objective standard into the duty to retreat. The trial court did, however, conclude its charge on self-defense with a proper statement of the law. It stated that, in determining whether the defendant had breached the duty to retreat, the jury must consider whether the defendant himself could in fact have

[6] Practice Book § 852 provides in pertinent part: "The [appellate] court shall not be bound to consider error as to the giving of, or the failure to give, an instruction *unless the matter is covered by a written request to charge* or exception has been taken by the party appealing immediately after the charge is delivered. . . ." (Emphasis added.)

perceived that he had the opportunity to avoid the necessity of using force by retreating.[7]

Our review of the defendant's claim requires that we consider the trial court's charge in its entirety to determine whether it is reasonably possible that the jury could have been misled by the instruction as it was given. *State* v. *Castonguay*, 218 Conn. 486, 498, 590 A.2d 901 (1991); *State* v. *Ortiz*, 217 Conn. 648, 662, 588 A.2d 127 (1991); *State* v. *Andrews*, 29 Conn. App. 533, 540, 616 A.2d 1148 (1992), cert. denied, 224 Conn. 924, 618 A.2d 531 (1993). "[W]e do not engage in a microscopic examination of the charge, dissecting it line by line, nor do we consider the challenged portions of the charge in isolation." *State* v. *Andrews,* supra; *State* v. *Wolff,* 29 Conn. App. 524, 531, 616 A.2d 1143 (1992). "Jury instructions need not be exhaustive, perfect or technically accurate. . . . They must be correct in law, adapted to the issues presented in the case and sufficient to guide the jury in reaching a verdict." (Citations omitted; internal quotation marks omitted.) *State* v. *Wolff,* supra.

Reading the instructions as a whole, we find that a correct statement of the law preceded and subsequently

---

[7] Specifically, the trial court stated: "So, as to retreat, you may consider the evidence that when the argument was escalating in Mr. Ellison's apartment and that the defendant was asked to leave, whether or not *he could perceive* that this was an act of wisdom to leave, taking his shoes and jacket, and leaving. Or when he was in Mr. Anglin's room and there was the opportunity of refuge—which apparently, after he was able to lock the door and before Mr. Anglin left the room to talk to Mr. Ellison, Mr. Ellison had apparently not attempted to break into the room and even when Mr. Anglin returned there was still the opportunity of remaining in the room.

"You may also consider the fact that in the room there was a telephone, so that there was the opportunity for looking for police assistance. When he did go out into the hall, *was he in fact looking for an opportunity of leaving the building.* Or as I recall his testimony, when they were fighting for some three minutes, after he had fallen on the knife, *was there an opportunity of him* enlisting Mr. Osborne's assistance to take custody of the knife." (Emphasis added.)

followed a misstatement of the law. We conclude, however, that in the context of the entire jury instruction, the improper instruction was harmless beyond a reasonable doubt. "While it is true that an instruction containing a misstatement of the law is more likely to be prejudicial than an instruction that contains an omission or an incomplete statement of the law . . . an incorrect instruction to the jury may be cured by a later correct instruction . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Harrison,* 32 Conn. App. 687, 696–97, 631 A.2d 324, cert. denied, 227 Conn. 932, 632 A.2d 708 (1993). In the present case, the trial court immediately cured its misstatement of the duty to retreat in its charge to the jury on self-defense. After incorrectly instructing the jury to consider the "reasonableness" of the defendant's perception regarding the availability of retreat, the trial court properly instructed the jury that the defendant must *subjectively* perceive that he can retreat in safety. See General Statutes § 53a-19 (b).

Considering the trial court's charge as a whole, we conclude that it was not reasonably possible that the jury was misled.

## IV

The defendant's final claim is that the trial court deprived him of his federal and state constitutional rights to a fair trial by an impartial jury by improperly marshaling the evidence in its jury charge in favor of the state.[8] We are not persuaded that the court unfairly emphasized the state's evidence.

---

[8] The defendant properly excepted to the jury charge as required by Practice Book § 854. Because the federal and state constitutions impose similar due process limitations, we have treated the defendant's federal and state due process claims together. See *State* v. *Hernandez,* 218 Conn. 458, 461 n.3, 590 A.2d 112 (1991); *Sekou* v. *Warden,* 216 Conn. 678, 690 n.7, 583 A.2d 1277 (1990).

"A trial court often has not only the right, but also the duty to comment on the evidence." *State* v. *Hernandez*, 218 Conn. 458, 461–62, 590 A.2d 112 (1991). Fair comment does not become improper merely because it tends to point out strengths, weaknesses, or difficulties of a particular case. *State* v. *Pollitt*, 205 Conn. 132, 157, 531 A.2d 125 (1987). In marshaling the evidence, the court must be careful not to imply any favor or criticism of either side. *State* v. *Hernandez*, supra, 463. The trial court may, at its discretion, call the attention of the jury to the evidence, or lack of evidence, bearing on any point in issue and may comment on the weight of the evidence as long as it does not direct or advise the jury how to decide the matter. *State* v. *Shannon*, 212 Conn. 387, 408, 563 A.2d 646, cert. denied, 493 U.S. 980, 110 S. Ct. 510, 107 L. Ed. 2d 512 (1989).

The defendant argues that the trial court unfairly marshaled the evidence during its explanation of the legal principles of intent and self-defense by ignoring or passing lightly over facts favorable to the defendant. Contrary to the defendant's assertion, the record reveals that the defendant was not prejudiced by the trial court's charge. Unlike in *Hernandez*, where our Supreme Court concluded that the trial court's charge was improper, the court here did not recapitulate "nearly all of the state's testimonial and physical evidence" and did not frequently comment "favorably on the credibility of the state's witnesses . . . ." *State* v. *Hernandez*, supra, 464. Although the trial court did provide a more detailed account of some of the state's evidence than of the defendant's counterevidence, it explained in detail the defendant's theories of defense and outlined the exculpatory evidence in support thereof. One reason more time was spent in marshaling the state's evidence is that there was more of it.

"In evaluating the court's charge, we are cognizant that [t]he test of a charge is not whether it applies pertinent rules of law to every ramification of facts conceivable from the evidence. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law." (Citations omitted; internal quotation marks omitted). Id., 465; see also *State* v. *Rumore,* 28 Conn. App. 402, 411, 613 A.2d 1328 (1992); *State* v. *Lee,* 32 Conn. App. 84, 103–105, 628 A.2d 1318, cert. denied, 227 Conn. 924, 632 A.2d 702 (1993).

Our review of the charge in its entirety leads us to conclude that the manner in which the trial court marshaled the evidence did not unduly prejudice the defendant or deprive him of his right to due process.

The judgment is affirmed.

In this opinion the other judges concurred.